Approved: _____
KIERSTEN A. FLETCHER
Assistant United States Attorney

Before:  THE HONORABLE ONA T. WANG
United States Magistrate Judge
Southern District of New York

19MAG 9522

------------------x

UNITED STATES OF AMERICA          :   **SEALED COMPLAINT**

         - v. -                   :   Violations of 18 U.S.C.
                                      §§ 1343 and 2
ASA SAINT CLAIR,                  :
    a/k/a "Asa Williams"              COUNTY OF OFFENSE:
    a/k/a "Asa Sinclair,"         :   NEW YORK

               Defendant.         :

------------------x

SOUTHERN DISTRICT OF NEW YORK, ss.:

JOHN J. RODRIGUEZ, being duly sworn, deposes and says that he is a Special Agent with the Department of Homeland Security - Homeland Security Investigations ("HSI") and charges as follows:

COUNT ONE
(Wire Fraud)

1. From at least in or about November 2017 up to and including at least in or about September 2019, in the Southern District of New York and elsewhere, ASA SAINT CLAIR, a/k/a "Asa Williams," a/k/a "Asa Sinclair," the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, SAINT CLAIR engaged in telephone calls and sent text messages falsely representing that his organization was developing a cryptocurrency coin and that investors would earn guaranteed returns on their investment in that coin.

(Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge of the foregoing charges are, in part, as follows:

2. I am a Special Agent with HSI. My duties and responsibilities include the investigation of fraud offenses including wire fraud and mail fraud. The information contained in this affidavit is based upon my personal knowledge and my review of documents and records gathered during the course of this investigation, as well as information obtained, directly or indirectly, from other sources. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of the investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview of the Investigation

3. Based on my participation in this investigation, I have become familiar with an organization known as "World Sports Alliance" ("WSA"). WSA purports to be an intergovernmental organization with the United Nations (the "UN"), which promotes the UN's Sustainable Development Goals by, among other things, promoting sports in the developing world through development projects.

4. WSA has a publicly accessible website, accessible at www.wsaigo.info (the "WSA website"). ASA SAINT CLAIR, a/k/a "Asa Williams," a/k/a "Asa Sinclair," the defendant, is listed as the "President" of WSA on WSA's website, which also includes a photograph of SAINT CLAIR. The WSA website further indicates that WSA is headquartered at 845 United Nations Plaza in New York, New York (the "WSA Office"). I have personally visited the WSA Office.

5. Based upon my participation in this investigation, my conversations with other law enforcement officers involved in this investigation, and my review of reports prepared by those officers, I have learned that WSA does not fund any development projects, and ASA SAINT CLAIR, a/k/a "Asa Williams," a/k/a "Asa Sinclair," the defendant, together with others known and unknown, operates WSA as a means to defraud individuals into providing money to WSA under the guise of furthering WSA's development goals. In fact, WSA has not

funded any development projects and instead appears to operate solely to fund the personal expenses of SAINT CLAIR and others. As set forth in more detail below, this fraud is perpetrated by SAINT CLAIR and others through the use of purported investment opportunities to aid in WSA's international development goals, including investments in cryptocurrency offerings.

## WSA's Fraud

6.  Based on my review of bank records obtained from Bank of America, I have learned, among other things, that ASA SAINT CLAIR, a/k/a "Asa Williams," a/k/a "Asa Sinclair," the defendant, opened a bank account in the name of "World Sports Alliance, a Nonprofit Corporation," (the "5078 Account") in or about June 2017.  Based upon a review of the records associated with the 5078 Account, I have learned, among other things, the following:

    a.  The 5078 Account is funded primarily through wire transfers by (1) an Arizona-based renewable energy company (the "Energy Company") and (2) various individuals.  For example, on or about March 21, 2018, an individual ("Individual-1") wired $5,765.00 to the 5078 Account.

    b.  The 5078 Account appears to be used to fund SAINT CLAIR's personal expenses, and the personal accounts of WSA's employees ("Employee-1" and "Employee-2") as well as the spouses of both Employee-1 and SAINT CLAIR.  For example:

        i.  On or about November 30, 2017, the 5078 Account transferred $40,000 to a bank account in the name of Taurino Capital, an entity I understand to SAINT CLAIR's personal account, as set forth below.

        ii.  The 5078 Account also includes several debit card transactions for online retailers, airlines, and food establishments.

7.  On or about October 3, another HSI agent ("Agent-1") interviewed several individuals, including Individual-1, regarding funds those individuals provided to WSA.  Based upon my review of Agent-1's reports of his interview of Individual-1, I have learned, among other things, the following:

    a.  Individual-1 was introduced to SAINT CLAIR by the father of a WSA employee.  SAINT CLAIR told Individual-1 that WSA was a company that helped other countries get water and food.

    b. SAINT CLAIR told Individual-1 that WSA was developing a digital currency called "IGOBIT" and that if Individual-1 loaned WSA money, Individual-1 would earn three times the amount invested. Indivdual-1 was further told that Individual-1 could receive repayment at any time Individual-1 demanded it.

    c. Individual-1 loaned WSA approximately $2,500. SAINT CLAIR provided Individual-1 with a promissory note. Individual-1 demanded that SAINT CLAIR repay the $2,500 promissory note several times but SAINT CLAIR did not make any payments.

  8. On or about October 3, 2019 Agent-1 interviewed Individual-2. Based upon my review of Agent-1's reports of his interview of Individual-2, I have learned, among other things, the following:

    a. In early 2018, Individual-2 invested approximately $3,000 in what Individual-2 understood to be a cryptocurrency offering.

    b. Individiual-2 understood that WSA worked in third-world countries to provide water and building sports facilities.

    c. Individual-2 asked ASA SAINT CLAIR, a/k/a "Asa Williams," a/k/a "Asa Sinclair," the defendant, to return Individual-2's money, and SAINT CLAIR told told Individual-2 several times that WSA had no money but would be getting a $100 million investment from an investor in India that would be used to repay Individual-2.

    d. Individual-2 has received no indication of a WSA cryptocurrency offering actually taking place.

  9. On or about October 3, 2019 Agent-1 interviewed Individual-3. Based upon my review of Agent-1's reports of his interview of Individual-3, I have learned, among other things, the following:

    a. In early 2018, Individual-3 invested approximately $10,000 in what Individual-3 understood to be a cryptocurrency offering called "IGOBIT." ASA SAINT CLAIR, a/k/a "Asa Williams," a/k/a "Asa Sinclair," the defendant, provided Individual-3 with a promissory note and told Individual—3 that

4

Individual-3 would get a 5% return on Indvdiaul-3's investment if Individual-3 invested for 365 days.

   b. Individual-3 was directed to the WSA website to learn about WSA and its mission.

   c. Individual-3 demanded repayment on the loan as early as November 2018.

   d. In or about June 2019, SAINT CLAIR told Individual-3, in substance, that WSA was launching "IGOBIT" and would repay the loan.

   e. On or about September 25, 2019, SAINT CLAIR told Invidivual-3 that SAINT CLAIR was "in the Vatican launching cryptocurrency" and that, Individual-3's "money is coming."

   f. Individual-3 has not been repaid.

  10. Based upon my review of the publicly available portions of the website www.igobit.com (the "IGOBIT Website"), I have learned that WSA published offering materials for a digital currency called "IGOBIT." Those offering materials contain the following representations, among others: "iGObit shall be fiscally sponsored by the full faith and credit of World Sports Alliance Intergovernmental Organization ("WSAIGO") on an unsecured basis, where WSAIGO has contractual entitlement to assets in excess of USD $120 billion (note: these concessions have yet to be operated)." ASA SAINT CLAIR, a/k/a "Asa Williams," a/k/a "Asa Sinclair," the defendant, is listed on the IGOBIT website as the Treasurer of WSA.

  11. On or about September 26, 2019 and September 30, 2019, HSI interviewed ASA SAINT CLAIR, a/k/a "Asa Williams," a/k/a "Asa Sinclair," the defendant, by phone and in person. During the course of the interviews, SAINT CLAIR consented to a search of his cellphone (the "SAINT CLAIR Cellphone") and told HSI, in substance and in part, the following:

   a. WSA was funded primarily through loans by friends and family.

   b. Funds received by WSA were used to further its development projects. When asked, SAINT CLAIR could not identify a single development project actually funded by WSA.

   c. Taurino Capital is SAINT CLAIR's personal investment vehicle and is unrelated to WSA.

12. Based upon my review of publicly available information maintained by the Financial Industry Regulatory Authority ("FINRA"), I have learned that ASA SAINT CLAIR, a/k/a "Asa Williams," a/k/a "Asa Sinclair," the defendant, has been the subject of several FINRA disciplinary proceedings, and has not been licensed by FINRA to participate in the securities industry since approximately 2014.

13. Based upon my review of the contents of the SAINT CLAIR Cellphone, I have learned, among other things, the following:

    a. On or about June 11, 2018, SAINT CLAIR told another member of WSA ("CC-1"), in substance and in part, that the Securities and Exchange Commission "officially fucked everyone today" by defining offerings of cryptocurrencies as securities.

    b. SAINT CLAIR had several communications with Individual-3, but there were no such communications from September 25, 2019. Based upon my training and experience, I believe that communications with Individual-3 were deleted before SAINT CLAIR consented to a search of the SAINT CLAIR Cellphone.

WHEREFORE, deponent prays that an arrest warrant be issued for ASA SAINT CLAIR, a/k/a "Asa Williams," a/k/a "Asa Sinclair," the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

_____
JOHN J. RODRIGUEZ
Special Agent
Department of Homeland Security –
Homeland Security Investigations

Sworn to before me this
10th day of October, 2019

_____
THE HONORABLE ONA T. WANG
United States Magistrate Judge
Southern District of New York