UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :

UNITED STATES OF AMERICA          :

                                       :     19 Cr. 790 (PKC)

         - v. -                     :

                                       :

ASA SAINT CLAIR,               :

                                       :

       Defendant.             :

                                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<br>

## GOVERNMENT'S OPPOSITION TO
## SAINT CLAIR'S MOTION TO SUPPRESS EVIDENCE

<br>

AUDREY STRAUSS
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

<br>

Emily Deininger
Kiersten A. Fletcher
Tara M. La Morte
Assistant United States Attorneys
-Of Counsel-

**TABLE OF CONTENTS**

BACKGROUND ................................................................................................................ 1

I.      The Search Warrant & Underlying Affidavit .................................................. 1

        A.  The Pump-And-Dump Schemes .................................................... 2

        B.  The Purported CAR Letter Agreements ................................................. 3

        C.  The Subject Premises..................................................................... 4

II.     The Search of the WSA Office........................................................................ 4

III.    The Charges...................................................................................................... 4

LEGAL STANDARD ...................................................................................................... 5

DISCUSSION .................................................................................................................. 7

CONCLUSION ................................................................................................................ 12

Asa Saint Clair (the "defendant") moves to suppress all evidence obtained as a result of the judicially-authorized search of WSA's business office, at which Saint Clair worked and resided, located at 845 United Nations Plaza, in New York, New York 20017 (the "Subject Premises" or "WSA Office"), on the basis that the information contained within the Affidavit supporting issuance of the Warrant was stale. The Court should deny this motion for two reasons. First, the Magistrate Judge who issued the Warrant correctly determined the information contained in the Affidavit, read in its totality, supported a finding of probable cause that materials sought to be seized would be found in WSA's Office, notwithstanding the passage of time, and this determination is owed substantial deference. Second, even if the Magistrate Judge erred, the Government's reliance on the Magistrate Judge's issuance of the Warrant was in good faith. Contrary to Saint Clair's unsupported assertions, the Affidavit makes no misleading statements regarding Saint Clair or WSA's involvement in the schemes described therein, and his observation that the statute of limitations may have expired for some of the Subject Offenses is incorrect as a matter of law, speculative as a matter of fact, and in any event, not a basis for concluding that the Warrant failed to set forth facts establishing probable cause.

## BACKGROUND

### I.    The Search Warrant & Underlying Affidavit

On or about September 25, 2019, the Honorable Robert W. Lehrburger, United States Magistrate Judge for the Southern District of New York, authorized a warrant (the "Search Warrant") to search the WSA Office for evidence of securities fraud, money laundering, and obstruction of justice. (Saint Clair Mot., Ex. A ("Affidavit") (Dkt. Nos. 30-1 to 30-4)). The Affidavit submitted in support of that warrant explained that the Government was investigating securities fraud (including violations committed by counterparties of WSA acting through WSA), violations of the Bank Secrecy Act (by a separate broker-dealer, Alpine Securities Corporation),

1

money laundering (by Alpine and its principals), and obstruction of justice offenses (by WSA and Saint Clair), and that there was probable cause to believe that evidence of those offenses would be found at the WSA Office, including on computers and potentially other electronic devices.

### A. The Pump-And-Dump Schemes

As described in the affidavit, Homeland Security Investigation ("HSI") had, since in or about 2015, been investigating Alpine Securities Corporation ("Alpine"), a broker-dealer operating in the penny stock market, and its owner, John Hurry ("Hurry") for potential securities fraud and money laundering offenses, among other things. (Affidavit ¶ 5). In particular, Alpine had received for deposit, and cleared trades for, shares of two companies—Ghana Gold Corporation ("GGCO") and Suburban Minerals Inc. ("SUBB")—involved in fraudulent pump and dump schemes. (Affidavit ¶¶ 6-26). The GGCO pump-and-dump occurred in or about 2013 (*id.* ¶¶ 13-16), while the SUBB pump-and-dump ended in or about March 2014 (when the SEC halted trading in the stock) (*id.* ¶ 26).

Both pump-and-dump schemes involved promotion of the companies' shares through numerous press releases regarding letters of intent that had been signed with WSA regarding the purported development of mining concessions in the Central African Republic ("the CAR"). (*Id.* ¶¶ 11, 14, 18, 21). For GGCO, the letter of intent with WSA, which was signed in April 2013, purported to grant GGCO development rights with regards to a purported $5 billion USD in gold concessions located in the CAR. (*Id.* ¶ 11). That agreement was terminated in or about December 2013. (*Id.* ¶ 16). For SUBB, the letter of intent with WSA, which was signed in December 2013, purported to grant SUBB development rights with regards to a purported $5 billion USD in diamond concessions located in the CAR. (*Id.* ¶ 18).

Because both the GGCO and SUBB pump-and-dump schemes involved stock promotions related to the letters of intent signed with WSA, there was probable cause to believe that WSA would have, as part of its course of business with GGCO and/or SUBB, records relevant to the ongoing investigation, including records regarding the existence, legitimacy or viability of the purported mining concessions.

## B. The Purported CAR Letter Agreements

As the Affidavit further explained, HSI served WSA with a grand jury subpoena (the "Subpoena"), in February 2018, seeking, among other things, documents relating to the above-described GGCO and SUBB transactions.  In response to the Subpoena, in 2018, WSA supplied HSI with documents purporting to reflect letter agreements between WSA and the CAR establishing WSA's rights to certain mining concessions.  (*Id.* ¶ 29). That is, as of February 2018, WSA itself demonstrated that documents relevant to the investigation continued to be maintained by WSA.

In or about 2019, however, the Government sent an official request for records to the CAR seeking, among other things, information regarding any agreements between the CAR and WSA related to WSA.  (*Id.* ¶ 30).  In response, the CAR informed the Government that the CAR had never granted any mining concessions to WSA.  (*Id.*).

Based on CAR's response, there was probable cause to believe that certain of the documents produced by WSA in response to the Subpoena were fraudulent (*Id.*), and that WSA would have records or other evidence regarding the receipt or creation of those fraudulent documents either in hard copy or on electronic devices.

3

### C. The Subject Premises

The Affidavit also set forth probable cause to believe that WSA was located at the WSA Office and would likely maintain relevant records there. *First*, as of September 2019, WSA's website indicated that it was located at the WSA Office. (*Id.* ¶ 27). *Second*, in or about 2019, a building employee had informed HSI that WSA was operated by Saint Clair, among others, out of the Subject Premises. (*Id.* ¶ 28). *Third*, when HSI served WSA with the Subpoena in 2018, it did so at the Subject Premises, where Saint Clair was observed working in what appeared to be an office space. (*Id.* ¶ 29). As noted above, WSA did in fact respond to the subpoena with what purported to be corporate records of WSA, although at least certain of those records appeared to be fraudulent.

Finally, the affidavit explained that individuals engaged in fraudulent schemes commonly use computers to, among other things, create fraudulent documents, and that evidence of criminal activity can be found on such electronic devices months or even years after it occurs because of the nature electronically stored information. (*Id.* ¶¶ 33-34).

## II.  The Search of the WSA Office

On or about September 25, 2019, HSI executed the Search Warrant at the WSA Office. HSI seized a number of physical evidence items, including various laptops, cellphone, other electronic devices, and documents. (Saint Clair Mot., Ex. C. (Dkt. Nos. 30-8 and 30-9)).

## III.  The Charges

On or about October 10, 2019, the Honorable Ona T. Wang, United States Magistrate Judge for the Southern District of New York, authorized a complaint charging Saint Clair with committing wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2, from at

least in or about November 2017 through at least in or about September 2019.[1]  As set forth in the complaint, there was probable cause to believe that Saint Clair operated WSA as a means to defraud individuals into providing money to WSA under the guise of furthering WSA's development goals, including purported investment opportunities in cryptocurrency offerings.[2] (Dkt. No. 1).  On or about November 5, 2019, a grand jury returned a one-count indictment charging the same offense set forth in the Complaint.  (Dkt. No. 6).

## LEGAL STANDARD

A district court "must accord considerable deference to the probable cause determination of the issuing magistrate." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007). Such deference derives not only from the law's recognition that probable cause is "a fluid concept" that can vary with the facts of each case, but also from its "strong preference for searches conducted pursuant to a warrant," *Illinois v. Gates*, 462 U.S. 213, 232, 236 (1983), and its related concern that "[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting," *United States v. Ventresca*, 380 U.S. 102, 108 (1965). Thus, the task of a reviewing court is simply to ensure that the "totality of the circumstances" afforded the magistrate "a substantial basis" for making the requisite probable cause determination. *Gates*, 462 U.S. at 238 (quotation marks omitted).

---

[1] As described above, the Search Warrant focused on the GGCO and SUBB pump and dump schemes, and the potential fraudulent creation of documents purporting to establish WSA's right to mining concessions in the CAR.  In or about February 2020, the Honorable Robert W. Lehrburger authorized a search warrant permitting the Government to search the electronic devices seized from the WSA Office for evidence of potential wire fraud or money laundering violations relating to WSA's purported offering of a cryptocurrency referred to as IGOBIT, in addition to any wire fraud or money laundering violations relating to the GGCO and SUBB pump-and-dump schemes.

[2] The allegations in the Complaint do not rely on any of the evidence seized from the WSA Office.

"[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit [applying for a warrant] should not take the form of de novo review." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Gates*, 462 U.S. at 236). "[C]ourts should not invalidate [a] warrant by interpreting the [supporting] affidavit in a hypertechnical, rather than a commonsense, manner." *Id.* (quoting *Jones v. United States*, 362 U.S. 257, 270 (1960)).

In order for there to be probable cause to search, there must be "a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. "Probable cause is a fluid concept turning on the assessment of probabilities in particular factual contexts, and as such is not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015) (citations, quotation marks and ellipsis omitted). In this Circuit, there is no "arbitrary cut-off" regarding when probable cause ceases to exist. *See United States v. Beltempo*, 675 F.2d 472, 478 (2d Cir. 1982). Rather, courts have held that "staleness challenges should be resolved through a flexible, commonsense inquiry into whether probable cause existed at the time the warrant issued." *See, e.g., United States v. Siddiqi*, 2007 WL 549420, *8 (S.D.N.Y. Feb. 21, 2007) (citing *Beltempo*, 989 F.2d 69 at 478). There is "no bright-line rule"; rather, the issue of staleness "must instead be evaluated "on the basis of the facts of each case." *Raymonda*, 780 F.3d at 114. The passage of time "is not controlling" but is simply "one factor to be considered, along with the kind of property sought and the nature of the criminal activity." *United States v. Singh*, 390 F.3d 168, 181 (2d Cir. 2004). The length of criminal activity is also a relevant factor. *Id.* at 182.

Even when a warrant is issued without probable cause in violation of the Fourth Amendment, the suppression of evidence seized is not automatic. As the Second Circuit recently explained, "because the remedy exacts a heavy toll on the justice system, the exclusionary rule

will apply only to deter deliberate, reckless, or grossly negligent conduct by law enforcement." *United States v. Boles*, 914 F.3d 95, 103 (2d Cir. 2019) (internal citation and quotation marks omitted). Accordingly, "[w]hen an officer genuinely believes that he has obtained a valid warrant . . . and executes that warrant in good faith, there is no conscious violation of the Fourth Amendment, 'and thus nothing to deter.'" *Id.* (quoting *Raymonda*, 780 F. 3d at 118).

For an officer to claim the "good faith exception," his/her reliance on a warrant must be objectively reasonable. Accordingly, the good faith exception does not protect an officer who relies on a judicially-authorized warrant "in at least four circumstances: (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *Boles*, 914 F.3d at 103 (quoting *Raymonda*, 780 F.3d at 118).

## DISCUSSION

The defendant's challenge to the Warrant is meritless. The Warrant established a reasonable likelihood that the information sought would be found at the WSA Office at the time the Search Warrant was executed. Notably, Saint Clair does not challenge the fact that at the time the Warrant was executed, there was probable cause to believe that that WSA was operating out of the Subject Premises. Nor does Saint Clair challenge the fact that WSA responded, in 2018, to a subpoena seeking WSA corporate records, which were in fact provided (albeit in part in an apparently fraudulent form). While he asserts that the schemes described in the Affidavit are roughly five years old, he omits two critical points: that there was probable cause to believe that an obstruction of justice offense (one predicated in part on the commission of the securities fraud and money laundering schemes) had occurred as late as in or about 2018, and that evidence of that

7

offense was likely to be found in the WSA Office, and also that the Affidavit established that relevant records pertaining to the GGCO and SUBB pump-and-dump schemes were in WSA's possession as of 2018.

*First,* as described above, and as set forth in the Affidavit, there was probable cause to believe that, in or about 2018, fraudulent letter agreements between WSA and the CAR were created, in response to the 2018 Subpoena issued to WSA, and that evidence regarding the creation, receipt, or author of those fraudulent documents might be found in the WSA Office and on electronic devices therein.  In asserting that the schemes were alleged to have occurred multiple years prior to the application for the Warrant, and potentially outside of the applicable statute of limitations, Saint Clair wholly ignores the allegations pertaining to the potential obstruction of justice, which relate specifically to the underlying securities fraud investigation.  There is no reason to believe that the Search Warrant was untimely with regard to that offense, particularly given that the evidence sought included electronic evidence typically stored on, and discoverable from, electronics devices long after an offense occurs.[3]

*Second,* as described above, and in the Affidavit, in 2018, the Government served Saint Clair with a grand jury subpoena—at the Subject Premises—requesting, among other things, WSA records pertaining to the schemes described in the Affidavit, and he responded to that subpoena with responsive documents from WSA.  (Affidavit ¶ 14.b.).  Simply put, the Affidavit

---

[3] Saint Clair is also mistaken about the applicability of the affirmative defense that may be provided to a defendant on the basis of a particular statute of limitations. First, as Saint Clair recognizes, the applicable statute of limitations, even without regarding to various tolling provisions, *see e.g.*, 18 U.S.C. 3292, for securities fraud is six years, placing the SUBB scheme within the statute at the time of the warrant's presentation to Judge Lehrburger. Second, violations of the Bank Secrecy Act are ongoing offenses, and the Affidavit's allegations regarding Alpine refer to it, correctly, as a going concern – evidence of securities frauds running through Alpine in 2013 and 2016 are nevertheless relevant to an investigation of that company's current BSA protocols and practices.

demonstrated that WSA had maintained, for many years prior, and through at least 2018 the types of records sought through the Warrant relating to the GGCO and SUBB pump-and-dump schemes. This is not surprising: as the caselaw recognizes, the passage of time is less likely to make a warrant stale where the targeted records are business records created for the purposes of preservation and the activity at issue was protracted. *See, e.g., United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 148 (3d Cir. 2002). Here, beyond the Government's showing that WSA had, in fact, maintained the types of records sought through the Warrant, the records sought were WSA business and financial records—in other words, the types of records created by businesses for the purposes of preservation, as recognized by caselaw. Moreover, the activity at issue spanned roughly a year for each of the schemes set forth in the Affidavit. (Affidavit ¶¶ 8-12).

In asserting that the Affidavit failed to establish probable cause to justify the Warrant, Saint Clair also argues that he played no role in the pump-and-dump schemes set forth in the Affidavit, and that the Affidavit failed to allege that WSA was located at the Subject Premises during 2013 and 2014, *i.e.* when the underlying schemes were alleged to have taken place. Again, these arguments miss the point. The standard for assessing probable cause in this context is not whether Saint Clair was personally involved in the underlying securities fraud, or whether WSA was located in the Subject Premises at the time those crimes allegedly occurred, but whether there existed probable cause to believe that the records sought would be located in the Subject Premises at the time the Warrant was issued by the Magistrate Judge. *See Gates*, 462 U.S. at 238. Here, as stated above, based on the fact that WSA responded to a subpoena for records pertaining to the underlying schemes at the Subject Premises in 2018, that the records sought in the Warrant are primarily WSA business and financial records, and the undisputed fact that WSA was operating at

the Subject Premises at the time the Warrant issued, there was a fair probability to believe that the records sought by the Warrant would be located at the Subject Premises, regardless of Saint Clair's involvement—or not—in the underlying pump-and-dump schemes. The Affidavit demonstrated that relevant records associated with the wrongdoing would likely still exist, and exist at that location, particularly in light of the established fact that WSA had maintained relevant documents in its business records as of at least 2018.

Moreover, to the extent that the purported letter agreements between the CAR and WSA were created in response to the Subpoena issued to WSA in 2018 (as investigation subsequent to the subpoena's service suggested), the obstruction of justice offense under investigation would have occurred well within the period during which Saint Clair was affiliated with WSA. Saint Clair Mot., Ex. B ¶¶ 5-6 ("Saint Clair Decl.") (Dkt. No. 30-6) (acknowledging he began employment with WSA by at least November 1, 2016. At the very least, the Affidavit's facts provide a "substantial basis" to affirm the Magistrate Judge's finding of probable cause. *See, e.g.*, *Singh*, 390 F.3d at 182 (upholding rejection of staleness claim to warrant; although 20 months elapsed between defendant's employment and search—which occurred at residence, not place of employment—the fraud scheme was lengthy and information showed records were maintained in residence); *United States v. LaMorte*, 744 F. Supp. 573, 575-76 (S.D.N.Y. 1990) (upholding magistrate's warrant for search of the defendant's *home* for records reflecting drug crimes that were committed three and a half years earlier; given length and depth of the drug scheme, "common sense" supports that the defendant would retain some records "long after" the activity ceased; moreover, records are not temporary in nature).

Finally, even if the Affidavit had not sufficiently established probable cause, suppression would still be unwarranted because the Government relied on the warrant in good faith. Assuming

for purposes of argument only that the Magistrate Judge was incorrect, he surely reached an independent determination of probable cause that was not contrary to established law or so facially deficient that reliance upon it was unreasonable.  In arguing that the Magistrate Judge was misled and that the warrant was so lacking on its face as to render reliance on the Magistrate Judge's determination unreasonable, Saint Clair falls back on his argument that he played no role in the scheme, and that Special Agent Sugarman should have known that (and included that fact in the Affidavit).  But as described above, the fact that Saint Clair may not have been involved in WSA until after the pump-and-dump schemes took place does not undermine the Affidavit's showing of probable cause as to those schemes, which turned on the Government's showing that the records sought continued to exist at the WSA Office, and wholly ignores the Affidavit's showing of probable cause as to the obstruction of justice offense, which there was probable cause to believe occurred in or about 2018.[4]

Saint Clair's unfounded suggestion that the statute of limitations for *certain* of the crimes set forth in the Affidavit *may* have expired likewise fails to negate the agents' good faith in executing the Warrant. Even assuming *arguendo* that the statute of limitations had expired for some of the listed crimes, there is no reason to believe that it had expired with regard to the SUBB securities fraud, BSA violations at the still-operating Alpine broker-dealer, or obstruction of justice offenses, or that any such expiration  undermines the Affidavit's showing that that there was a fair probability that evidence of crime existed at the Subject Premises at the time the Magistrate Judge issued the Warrant. Consequently, there is no basis for imparting a lack of good faith to Special

---

[4] In addition, contrary to Saint Clair's representation, the Affidavit does not misleadingly suggest that Saint Clair (or Alain Lemieux) was involved in the GGCO and SUBB pump-and-dump schemes; indeed, the Affidavit clearly identifies the key individuals the Government contends were involved in the schemes, and describes Saint Clair's involvement with WSA in the 2018-2019 timeframe, *i.e.* years after those schemes concluded.

11

Agent Sugarman in light of Saint Clair's specious claims regarding applicable statutes of limitation. . *See United States v. Leon*, 468 U.S. 897 (1984); *Boles*, 914 F.3d at 103-105 (upholding refusal to suppress evidence; even if probable cause supported warrant was lacking due to staleness of information, officers relied upon warrant's issuance in good faith); *United States v. Falso*, 544 F.3d 110, 135 (2d Cir. 2008).

## CONCLUSION

For the foregoing reasons, the Court should deny the defendant's pretrial motion.

Dated:  New York, New York
       May 21, 2021

                    Respectfully submitted,

                    AUDREY STRAUSS
                    United States Attorney

By:         /s/
                    Emily Deininger
                    Kiersten A. Fletcher
                    Tara M. La Morte
                    Assistant United States Attorneys
                    (212) 637-2472 / 2238 / 1041