UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                                19 CR 790 (PKC)

         -against-                               OPINION AND
                                                                ORDER

ASA SAINT CLAIR,

                            Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Defendant Asa Saint Clair moves to suppress evidence seized during a search of an apartment where he worked and resided on grounds that the information supporting probable cause for the warrant was stale at the time that it was issued. Defendant further urges that if the warrant was in fact stale and lacked probable cause, that the good faith exception is inapplicable and therefore the evidence recovered from the premises should be suppressed. For reasons to be explained, the motion will be denied.

BACKGROUND

        On November 5, 2019, defendant was charged in an indictment with one count of wire fraud in violation of 18 U.S.C. § 1343 based on his involvement "in a digital coin offering of a purported blockchain-based digital token referred to as 'IGOBIT.' " (Indictment ¶ 1; Doc 6). The indictment alleges that IGOBIT was offered by the World Sports Alliance ("WSA") and that defendant purported to be the President of the WSA. (Indictment ¶¶ 1–2). It alleges that defendant engaged in the fraudulent scheme between November 2017 and September 2019. (Indictment ¶ 2).

On September 25, 2019, Graham Sugarman, a special agent from the Department of Homeland Security ("HSI") submitted an affidavit to Magistrate Judge Robert Lehrburger in support of a search warrant (the "Warrant") for 845 United Nations Plaza, Apt. 43B, New York, NY 10017 (the "Subject Premises"). (Warrant Application; Doc 30 Ex. A). Judge Lehrburger issued the requested warrant that same day. On or about September 25, 2019, HSI agents executed the Warrant and seized physical evidence including laptops, a cellphone and other electronic devices from the Subject Premises. (Doc 30 Ex. C). The Warrant application asserts that the WSA, according to its website, was an "intergovernmental organization that promotes sports as a means of diplomacy, socio-economic mobility, human development, education and training for the people that make up the citizens of its 33 member states." (Warrant App. ¶ 7).

The underlying offense charged in the Indictment is based on conduct that is different from what was detailed in the Warrant application.[1] The Warrant application sought authorization to search the Subject Premises for evidence of securities fraud, money laundering, the Bank Secrecy Act and obstruction of justice related to HSI's investigation of Alpine Securities Corporation ("Alpine"). (Warrant App. ¶¶ 4–5). It asserts that Alpine was a broker-dealer in the penny stock market that participated in or facilitated market manipulation and pump-and-dump schemes. (Warrant App. ¶ 5).

The Warrant application details two such schemes involving WSA in which Alpine received for deposit and cleared trades of Ghana Gold Corporation ("GGCO") and Suburban Minerals Inc. ("SUBB"). (Warrant App. ¶¶ 8, 12c). Shares in GGCO and SUBB traded in the over-the-counter markets. (Warrant App. ¶¶ 6, 12a). The Warrant application

---

[1] According to the government, in February 2020, Judge Lehrburger authorized a search warrant permitting the government to search the electronic devices seized on or about September 25, 2019 for evidence relating to WSA's purported offering of IGOBIT. Defendant does not specifically challenge whether probable cause supported the issuance of that warrant.

2

asserts that the WSA was purportedly granted various mining concessions by the Central African Republic ("CAR") and that GGCO and SUBB, in two separate transactions, acquired these mining concessions from the WSA in exchange for shares of their stock.  (Warrant App. ¶¶ 10b, 12b).  The Warrant application asserts that subsequent to these transactions there was sharply increased trading volumes in GGCO and SUBB shares.  (Warrant App. ¶¶ 11b, 12g).

       The WSA's agreement with GGCO was allegedly negotiated and signed between February and April 2013.  (Warrant App. ¶¶ 9–10).  The Warrant application asserts that GGCO made public statements between April and June 2013 concerning the agreement with the WSA and that the agreement was ultimately terminated in December 2013.  (Warrant App. ¶ 11).

       On January 24, 2014, the WSA entered into an asset purchase agreement with SUBB based on a letter of intent dated December 8, 2013.  (Warrant App. ¶ 12d).  Between January and March 2014, SUBB issued public statements concerning this agreement.  (Warrant App. ¶ 12e).  On March 7, 2014 the Securities and Exchange Commission suspended trading in SUBB due to questions over the accuracy of the company's disclosures.  (Warrant App. ¶ 12j).

       As described in more detail below, the Warrant application asserted that the Subject Premises was the business location of the WSA and that defendant resided and worked at the Subject Premises.  (Warrant App. ¶¶ 13–14).  It further detailed that on February 12, 2018 HSI served the WSA at the Subject Premises with a grand jury subpoena that sought documents related to the GGCO and SUBB transactions.  Defendant accepted service of the subpoena on behalf of the WSA.  (Warrant App. ¶ 14).  The WSA produced documents in response to the subpoena, which the Warrant application states may be fraudulent.  (Warrant App. ¶ 14).

LEGAL STANDARD

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "To prevent . . . 'general, exploratory rummaging in a person's belongings' and the attendant privacy violations, the Fourth Amendment provides that 'a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity.' " United States v. Galpin, 720 F.3d 436, 445 (2d Cir. 2013) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971) and Kentucky v. King, 563 U.S. 452, 459 (2011)) (internal citation omitted). "[A] warrant will issue only if: (1) the Government establishes probable cause to believe the search will uncover evidence of a specific crime; and (2) the warrant states with particularity the areas to be searched and the items to be seized." United States v. Ganias, 755 F.3d 125, 134 (2d Cir. 2014) (citing Galpin, 720 F.3d at 445).

For a search warrant, probable cause is any information that indicates a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "Probable cause 'is a fluid concept' turning 'on the assessment of probabilities in particular factual contexts,' and as such is not 'readily, or even usefully, reduced to a neat set of legal rules.' " United States v. Raymonda, 780 F.3d 105, 113 (2d Cir. 2015) (quoting United States v. Falso, 544 F.3d 110, 117 (2d Cir. 2008)). The factual information "must be contained within the four corners of a written affidavit given under oath." Falso, 544 F.3d at 122 (citation omitted). "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' " Gates, 462 U.S. at 236 (quoting Spinelli

4

v. United States, 393 U.S. 410, 419 (1969)).  This Court's inquiry is limited to "whether the issuing judicial officer had a substantial basis for the finding of probable cause." United States v. Wagner, 989 F.2d 69, 72 (2d Cir. 1993).

A warrant may lack probable cause "where the facts supporting criminal activity have grown stale by the time the warrant issues." Raymonda, 780 F.3d at 114.  The relevant inquiry is whether probable cause "'exist[s] *as of the time of the search*.' " Id. (emphasis in original) (quoting Wagner, 989 F.2d at 75).

There is "no bright-line rule for staleness" Walczyk v. Rio, 496 F.3d 139, 162 (2d Cir. 2007); it depends "on the basis of the facts of each case." United States v. Martino, 664 F.2d 860, 867 (2d Cir. 1981).  "The two critical factors in determining staleness are the age of the facts alleged and the 'nature of the conduct alleged to have violated the law.' " Raymonda, 780 F.3d at 114 (quoting United States v. Ortiz, 143 F.3d 728, 732 (2d Cir. 1998)).  "[T]he kind of property sought" and "[t]he length of criminal activity" are other factors that the Court considers.  United States v. Singh, 390 F.3d 168, 181–82 (2d Cir. 2004).

If the Court concludes that a warrant was issued without probable cause, "suppression of the evidence is not automatic. . . . " United States v. Boles, 914 F.3d 95, 103 (2d Cir. 2019).  Application of the exclusionary rule, which forbids the use of improperly obtained evidence at trial, is designed to deter future Fourth Amendment violations.  Davis v. United States,  564 U.S. 229, 236–37 (2011).  Accordingly, evidence will be suppressed "only to deter 'deliberate, reckless, or grossly negligent conduct' by law enforcement." Boles, 914 F.3d at 103 (quoting Herring v. United States, 555 U.S. 135, 144 (2009)).

The Supreme Court has "set out an exception to the exclusionary rule for a search conducted in good faith reliance upon an objectively reasonable search warrant." United States

5

v. Bershchansky, 788 F.3d 102, 112–13 (2d Cir. 2015); see also Raymonda, 780 F.3d at 118 ("When an officer genuinely believes that he has obtained a valid warrant from a magistrate and executes that warrant in good faith, there is no conscious violation of the Fourth Amendment, 'and thus nothing to deter.' ") (quoting United States v. Leon, 468 U.S. 897, 920–21 (1984)). The Court's "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." United States v. Rosa, 626 F.3d 56, 64 (2d Cir. 2010) (internal quotation marks and citation omitted). Accordingly, for law enforcement to claim good faith, its "reliance on a warrant must be objectively reasonable." Boles, 914 F.3d at 103 (citing Leon, 468 U.S. at 922). Good faith reliance by an officer is unreasonable "in at least four circumstances: '(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.' " Raymonda, 780 F.3d at 118 (quoting United States v. Clark, 638 F.3d 89, 100 (2d Cir. 2011)). "The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance on an invalidated warrant." Clark, 638 F.3d at 100 (internal quotation marks omitted).

DISCUSSION

Defendant urges that the Warrant application was based on stale information because the WSA agreements involving GGCO and SUBB ceased in December 2013 and March 2014, respectively. Defendant further asserts that he did not become affiliated with the WSA until November 1, 2016 and that there were no facts in the Warrant application supporting that

6

the WSA operated out of the Subject Premises in 2013 or 2014.  (St. Clair Decl. ¶¶ 5–6; Doc 30 Ex. B).

The Warrant application sets forth facts, proximate to the time of the search on September 25, 2019, that the Subject Premises was the business location of the WSA and that defendant resided and worked at the Subject Premises.  (Warrant App. ¶¶ 13–14).  According to the Warrant Application, HSI agents spoke with an employee of the building where the Subject Premises is located on several occasions in 2018 and 2019.  This employee informed HSI that the WSA was operated by Alain Lemieux and defendant, that he or she had observed Lemieux and defendant at the Subject Premises and that defendant appeared to reside and work at the Subject Premises.  (Warrant App. ¶ 14a).  On September 23, 2019, the employee told an HSI agent that he had observed defendant in the building in recent weeks but that the Subject Premises was in foreclosure and needed to be vacated by September 30, 2019.  (Warrant App. ¶ 15).  Moreover, as of September 25, 2019, the WSA's website stated that it was located at the Subject premises.  (Warrant App. ¶ 13)

The information in the Warrant application concerning the obstruction of justice charge supports a finding of probable cause as to both that charge and the other charges related to securities transactions.  On February 12, 2018, defendant accepted service of a subpoena on behalf of the WSA that sought information related to the GGCO and SUBB transactions. (Warrant App. ¶ 14b).  HSI served the subpoena on defendant at the Subject Premises, who appeared to be working in an office space at that location.  In response to the subpoena, WSA produced documents "purporting to reflect letter agreements between WSA and the CAR," but the Warrant application does not specify the exact date of this production.  (Warrant App. ¶ 14b). In 2019, the government sent a request for records to the CAR seeking information concerning

any agreements between the CAR and WSA.  (Warrant App. ¶ 14c).  The CAR responded that while the WSA had sought mining concessions in 2012, no such concessions were ever granted.  (Warrant App. ¶ 14c).  Based on these assertions, the Warrant application states that "it appears that certain of the documents produced by the WSA in response to the [s]ubpoena may be fraudulent."  (Warrant App. ¶ 14c).

The WSA's acceptance of the subpoena at the Subject Premises and its response to that subpoena, combined with the type of records sought by the Warrant, support that there was probable cause to believe information concerning the GGCO and SUBB transactions were in the WSA's possession at that location.  The subpoena response supports the inference that the WSA maintained and preserved business records, including in electronic form, as of the time the Warrant was executed.  The records sought by the Warrant from the WSA were of the type that would likely be kept over a period of years and would be reasonably likely to be found at the WSA's current location.  (Warrant App. ¶ 17 (identifying that "individuals who engage in fraudulent schemes commonly . . . keep a record of illegal transactions or criminal proceeds for future reference" and "often store data on their computers related to their illegal activity").  In fact, the Warrant application asserted that there was probable cause to search the Subject Premises because it was likely to contain this type of information. (Warrant App. ¶ 16 ("Specifically, the Subject Premises is likely to contain documents and electronic communications regarding the GGCO and SUBB transactions, communications between the WSA and CAR officials, and records of how and when the documents produced in response to the [s]ubpoena were created, among other evidence.")).

Although one year, depending on the date of production, might have elapsed between the WSA's response to the subpoena and the Warrant's execution on September 25,

2019, the nature of the conduct and the type of documents sought including written agreements, business records and communications regarding securities transactions weigh against a finding of staleness.  See Singh, 300 F.3d at 182 ("The affidavit established probable cause to believe that Singh continued to maintain business records evidencing fraud at his residence during the more than twenty months that elapsed between the last known occurrence of the facts relied on and the issuance of the warrant.").  Taken together with the information in the Warrant from the week of the search that the WSA, and defendant in his WSA capacity, operated out the Subject Premises, the Magistrate Judge did not err in finding that probable cause existed at the time of the search notwithstanding that the underlying securities fraud was alleged to have ended in 2014.[2]

Even if probable cause was lacking, the evidence should not be suppressed because the HSI agents who executed the search relied in good faith on a duly issued warrant.  The Magistrate Judge's finding of probable cause was not so facially insufficient such that any reliance on the warrant was unreasonable.

Defendant first urges that the agents were reckless or grossly negligent for failing to disclose that defendant was not affiliated with the WSA until 2016, which was after the GGCO and SUBB transactions.  The Warrant application is silent on when defendant became affiliated with WSA and, with respect to the GGCO and SUBB transactions, ascribes the conduct to "WSA officials" or the "WSA" without naming specific individuals.  (See, e.g., Warrant App. ¶¶ 9–12).  The record does not reveal whether the HSI agents knew at the time of the Warrant application whether defendant was affiliated with the WSA in 2013 or 2014, and defendant does not claim that the "agents deliberately misled the magistrate into issuing the Warrant."  (Def's

---

[2] Defendant makes much of the fact that the Indictment ultimately charged him with offenses unrelated to those identified in the Warrant.  However, whether probable cause for the Warrant existed at the time of search is independent of the grand jury's subsequent decision to return the pending indictment against the defendant.

Mem. at 12; Doc 31). The existence of probable cause for the search did not depend on whether defendant personally participated in the GGCO and SUBB transactions. The relevant inquiry turns on whether there was probable cause to believe that the WSA's records concerning these transactions would be found at the Subject Premises at the time the Warrant was issued. Moreover, the Warrant was issued in order to search for records related to the WSA as an organization, not defendant individually. Accordingly, whether the agents were reckless or grossly negligent in failing to identify that defendant was affiliated with the WSA at the time of the transactions, assuming they were aware of this fact, does not undermine the Magistrate Judge's finding that probable caused existed.

        Second, defendant urges that the agents' good faith reliance was objectively unreasonable because the statute of limitations expired for some of the offenses listed in the warrant. The Warrant was executed on September 25, 2019 and the GGCO and SUBB transactions ceased in December 2013 and March 2014, respectively. The search was therefore executed prior to the expiration of the six-year limitations period for securities fraud. 18 U.S.C. § 3301. Moreover, any claim that the government could not return a timely indictment for securities fraud subsequent to the search is speculative on this record. The obstruction of justice charge in the Warrant stemmed from conduct in 2018, well within the five-year limitations period. 18 U.S.C. § 3282. Moreover, the government asserts that certain offenses were ongoing for statute of limitations purpose or could be subject to tolling. (Gov't Opp. at 8 n.3; Doc 32). Because certain of the charges could have been brought within the relevant statute of limitations at the time the Warrant was issued, the Warrant application was not so lacking in indicia of probable cause as to render reliance upon it unreasonable.

CONCLUSION

Defendant's motion to suppress the evidence recovered pursuant to the Warrant to search the Subject Premises is DENIED. The Clerk is directed to terminate the motion. (Doc 29).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
July 20, 2021